IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

CELINE M. SLIFER                                                              PLAINTIFF

V.                              CIVIL NO. 3:14-CV-03106-MEF

CAROLYN W. COLVIN, Commissioner
Social Security Administration                                        DEFENDANT

## MEMORANDUM OPINION

Plaintiff, Celine M. Slifer, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for a period of disability and disability insurance benefits ("DIB") under the provisions of Title II of the Social Security Act ("Act"). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

## I. Procedural Background

Plaintiff filed her application for DIB on August 19, 2011 (T. 138-141), alleging an inability to work since August 1, 2007, due to rheumatoid arthritis. (T. 184) For DIB purposes, Plaintiff's date last insured is December 31, 2015. (T. 180) Plaintiff's claim was denied initially on September 15, 2011, and denied on reconsideration on October 2, 2011. (T. 76-78, 79-80) An administrative hearing was held on May 11, 2012, at which Plaintiff appeared with counsel and testified. (T. 22-54)

At the hearing, the alleged date of onset was amended to December 31, 2010. (T. 25) Plaintiff was, at the time of hearing, forty-eight (48) years of age, and she possessed a high school education. (T. 26) Plaintiff had past relevant work ("PRW") experience as a warehouse and janitorial employee

at a distribution center. (T. 28-30)

By a written decision dated May 24, 2012, the Administrative Law Judge ("ALJ"), Hon. Ronald L. Burton, determined that Plaintiff's rheumatoid arthritis was a severe impairment, but that Plaintiff's impairment did not meet or equal the level of severity of any impairment listed in the Listing of Impairments. (T. 62-63) After partially discounting Plaintiff's credibility, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform the full range of sedentary work as defined in 20 CFR § 404.1567(a). (T. 63) The ALJ determined Plaintiff could not perform her PRW (T. 66), but that based on an RFC for the full range of sedentary work, considering Plaintiff's age, education, and work experience, a finding of "not disabled" was directed by the Medical-Vocational Guidelines ("grids"), Rule 201.21. (T. 67). The ALJ then found that Plaintiff had not been under a disability during the relevant time period. (T. 67)

Plaintiff requested a review of the hearing decision by the Appeals Council on June 11, 2012. (T. 128-130). On July 19, 2013, the Appeals Council entered an Order remanding the case to the ALJ because the hearing recording could not be located and, therefore, the record was incomplete. (T. 73) Plaintiff then submitted additional documentation in support of her claim, including a medical source statement from Ronald Rubio, M.D. dated December 20, 2013, and treatment records from Dr. Rubio dated November 4, 2013 through March 7, 2014. (T. 12, 13-21) On April 23, 2014, the Appeals Council vacated its earlier Order of Remand, stating that "[s]ubsequent to the remand, the missing recording was located and associated with the record which is now complete." (T. 10) On September 12, 2014, the Appeals Council denied Plaintiff's request for review. (T. 1-6) Plaintiff then filed this action on November 14, 2014. (Doc. 1) This case is before the undersigned pursuant to the consent of the parties. (Doc. 6) Both parties have filed appeal briefs (Docs. 8, 9), and the case is

ready for decision.

## II. Applicable Law.

This Court's role is to determine whether substantial evidence supports the Commissioner's findings. *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Teague v. Astrue*, 638 F.3d 611, 614 (8th Cir. 2011). The Court must affirm the ALJ's decision if the record contains substantial evidence to support it. *Blackburn v. Colvin,* 761 F.3d 853, 858 (8th Cir. 2014). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the Court must affirm the ALJ's decision.  *Id*.

A claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. § 423(d)(1)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

-3-

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. *See* 20 C.F.R. § 404.1520(a)(4). Only if he reaches the final stage does the fact finder consider the Plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. § 404.1520(a)(4)(v).

### III. Discussion

Plaintiff argues on appeal: (1) that the ALJ erred in failing to give controlling weight to the opinion of Plaintiff's treating physician; (2) that substantial evidence does not support the RFC determination as there was no function-by-function analysis of Plaintiff's limitations and no medical evidence supporting the ALJ's RFC determination; and, (3) that the ALJ failed to utilize the vocational expert (VE).

The Court is concerned that the ALJ incorrectly assessed Plaintiff's RFC and errantly relied on the Grids because Plaintiff's RFC was significantly diminished by nonexertional limitations.

### A.  RFC Determination

The Court is particularly troubled by the ALJ's RFC determination. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). A disability claimant has the burden of establishing her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). "The

ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003). "Under this step, the ALJ is required to set forth specifically a claimant's limitations and to determine how those limitations affect her RFC." *Id.*

The ALJ determined Plaintiff's rheumatoid arthritis was a severe impairment (T. 62), but the ALJ then found Plaintiff had the RFC to perform the full range of sedentary work with no nonexertional limitations. (T. 63-66) This RFC determination concerns the Court.

A review of the record shows Plaintiff suffered from rheumatoid arthritis (RA), and had consistently sought treatment for it, since 2008. On August 1, 2008, Plaintiff presented to Ronald Rubio, M.D. of North Arkansas Rheumatology, PLC for initial evaluation. (T. 267-269) She complained "my joints hurt," and she reported a history of musculoskeletal difficulties since February 2008. These difficulties included aching pain and stiffness to her arms, elbows, hips, ankles and feet. A blood test showed positive RF at 15.2 IU/ml. Dr. Rubio remarked that Plaintiff's exam was "largely unremarkable," but he ordered films of Plaintiff's feet and lab tests, and he started her

on Naprosyn and scheduled a follow-up visit in two weeks. (T. 269) Plaintiff returned to Dr. Rubio on August 15, 2008, at which time she related that her arm pain had improved, and while the swelling in her right foot had come down the pain persisted. (T. 266) Tenderness and swelling to Plaintiff's right 5th MTP joint was noted, and it was also noted that all MTP joints were tender to lateral pressure. (T. 266) Plaintiff was diagnosed with "rheumatoid arthritis[1] with signs of activity," and she was counseled in detail regarding treatment options to help control her disease activity. She elected to start Methotrexate[2] 10 mg po per week taken along with Folic Acid 1 mg per day. (T. 266) The Methotrexate was increased to 15 mg per week on September 15, 2008. (T. 265) On October 26, 2009, Dr. Rubio noted that Plaintiff's RA was stable, and he continued her on Methotrexate 20 mg po per week, taken along with Folic Acid 1 mg per day, and she was also continued on Plaquenil 200 mg BID. (T. 264) Plaintiff consistently returned to Dr. Rubio for treatment of her RA throughout 2010. (T. 258-263)

On August 30, 2010, signs of RA activity were again noted, and Plaintiff's medications were adjusted to include Methotrexate 25 mg po per week taken along with Folic Acid, Plaquenil 200 mg b.i.d., Naprosyn, and Humira 40 mg sub-Q every two weeks was commenced. (T. 259) Dr. Rubio

---

[1]  Rheumatoid arthritis is a chronic inflammatory disorder that typically affects the small joints in your hands and feet. It affects the lining of your joints, causing a painful swelling that can eventually result in bone erosion and joint deformity. www.mayoclinic.org/diseases-conditions/rheumatoid-arthritis/basics/definition/con-20014868 (last accessed November 10, 2015).

[2]  There is no cure for RA. Medications can reduce inflammation in your joints in order to relieve pain and prevent or slow joint damage. Methotrexate is a disease-modifying antirheumatic drug (DMARD), that can slow the progression of RA and save the joints and other tissues from permanent damage. Side effects vary but may include liver damage, bone marrow suppression and severe lung infections. www.mayoclinic.org/diseases-conditions/rheumatoid-arthritis/basics/treatment/con-20014868 (last accessed November 10, 2015).

-6-

again noted that Plaintiff's RA showed signs of activity on November 2, 2010, although Plaintiff felt her joints, especially her shoulders and neck, were getting better since commencing Humira. She was continued on her medications. (T. 258)

Plaintiff last worked on December 31, 2010. In her Work Activity Report dated August 19, 2011, Plaintiff advised that she stopped working because "I could no longer stand very long on concrete or use my hands for hours at a time[,]" and that "[e]ven with my medication I still hurt all the time." (T. 171) She testified at the hearing that she stopped working because "I hurt too bad," and "sometimes my hands wouldn't even work or my arms would give out, I just couldn't do it." (T. 37) She described experiencing problems with her elbows and shoulders, hands (i.e., difficulty holding a pen), knees, hips, and feet. (T. 38) She related that she had been on Methotrexate for years, but she had been taken off of it because her liver enzymes were going up. (T. 38) The ALJ observed that Plaintiff testified she was getting stiff just sitting in the hearing, and that she stood while her husband testified. (T. 47, 64)

The medical records show that Plaintiff was taken off of Methotrexate on April 10, 2012 due to elevated liver function tests. (T. 490) Three months later, on July 24, 2012, Plaintiff reported that she felt her joints were getting worse since she stopped taking Methotrexate, and her physical exam revealed tender joints in her hands and wrists, and tenderness to her trigger points. (T. 492) Plaintiff was re-started on Methotrexate on January 28, 2013. (T. 497)

As for medical opinion evidence, Plaintiff's treating physician, Dr. Rubio, completed an Arthritis Residual Functional Capacity Questionnaire on January 18, 2012. In it, he indicated that he had seen Plaintiff for a 45 minute initial consult and 20 follow-up visits of 25 minutes each. He reported his diagnosis of RA and a "poor" prognosis. He identified Plaintiff's symptoms as joint

pain, stiffness and swelling. He indicated that Plaintiff experienced constant burning and throbbing pain to arms, elbows, hips, ankles and feet. (T. 481) Objective signs were noted to be tenderness and swelling. He did not find Plaintiff to be a malingerer. He found that she would frequently experience pain severe enough to interfere with attention and concentration. (T. 482) Dr. Rubio opined that Plaintiff was incapable of even "low stress jobs" due to constant aching pain to wrists, knees, ankles, and feet "despite optimum therapy." (T. 483) He stated that Plaintiff could sit about four (4) hours total in an eight (8) hour workday, and that she could stand/walk less than two (2) hours total in an eight (8) hour workday. (T. 484) He reported that Plaintiff could occasionally lift/carry less than ten (10) pounds, rarely lift/carry ten (10) pounds, and never lift/carry twenty (20) or more pounds. (T. 485) He felt Plaintiff could occasionally twist and stoop/bend, but never crouch, climb ladders, or climb stairs. He indicated Plaintiff would be limited to reaching, handling or fingering fifty percent (50%) of the time during an eight (8) hour workday. Noting that Plaintiff's impairments were likely to produce good days and bad days, he opined that Plaintiff was likely to be absent from work as a result of her impairments more than four (4) days per month. (T. 486) Dr. Rubio also advised that Plaintiff should avoid temperature extremes and humidity as they would aggravate her joint symptoms. (T. 487) Dr. Rubio issued supplemental medical source statements on October 11, 2013 and December 20, 2013 advising that Plaintiff's RFC "remained about the same" as set forth on January 18, 2012. (T. 12, 503-504)

The only other medical opinion evidence was the Physical Residual Functional Capacity Assessment prepared by a non-examining State agency consultant, Jerry Thomas, M.D., who on September 14, 2011 opined that Plaintiff could occasionally lift/carry twenty (20) pounds and frequently lift/carry ten (10) pounds; stand/walk about six (6) hours in an eight (8) hour workday;

sit about six (6) hours in an eight (8) hour workday; with no restrictions for pushing/pulling (other than as shown for lift/carry); and, had no postural, manipulative, visual, communicative, or environmental limitations. (T. 398-405) On September 30, 2011, Julius Petty, M.D., another non-examining State agency consultant, affirmed the physical RFC prepared by Dr. Thomas. (T. 412)

In arriving at his RFC decision, the ALJ concluded that Plaintiff is more limited than determined by the State agency medical consultants who evaluated the issue at the initial and reconsideration levels. (T. 65) While the ALJ gave some weight to the opinion of Plaintiff's treating physician, Dr. Rubio, the ALJ found that Dr. Rubio's RFC assessment was "excessive in part based on all the medical evidence of record." (T. 66)

Whether the ALJ grants a treating physician's opinion substantial or little weight, the regulations provide that the ALJ must "always give good reasons" for the particular weight given to a treating physician's evaluation. 20 C.F.R § 404.1527(d)(2); *see also* SSR 96-2p; *See Prosch v. Apfel,* 201 F.3d at 1010, 1012-13 (8th Cir. 2000); *Collins ex rel. Williams v. Barnhart*, 335 F.3d 726, 730 (8th Cir. 2003) (holding that a treating physician's opinion is generally entitled to substantial weight). The ALJ is also encouraged to give more weight to the opinion of a specialist about medical issues related to his or her area of speciality than to the opinion of a source who is not a specialist. *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000).

We note, however, that although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as whole. *Hogan v. Apfel* 239 F.3d 958, 961 (8th Cir. 2001). The ALJ may discount or disregard such an opinion if other medical assessments are supported by superior, or more thorough medical evidence, or if the treating physician has offered inconsistent opinions. *Id*.; *Rogers v. Chater*,118 F.3d 600, 602 (8th Cir. 1997).

When presented with a treating physician's opinion, the ALJ is obligated to examine the nature and extent of the treatment relationship, attributing weight to such an opinion that is proportionate to the knowledge that the medical provider has about the claimant's impairments. 20 C.F.R. § 416.927(d)(2)(ii). In the present case, Dr. Rubio had been consistently treating Plaintiff's RA for over three years (21 office visits) before he issued his RFC assessment on January 18, 2012. (T. 481) Despite the lengthy treatment relationship between Plaintiff and Dr. Rubio, the ALJ found that the limitations set forth in Dr. Rubio's January 18, 2012 RFC assessment were inconsistent with the overall medical evidence of record; however, the only other RFC assessments of Plaintiff were completed by non-examining State agency doctors four months prior to Dr. Rubio's assessment, and the ALJ also discounted those RFC assessments as not being based on the evidence of record.

An "ALJ must not substitute his opinions for those of the physician." *Ness v. Sullivan*, 904 F.2d 432,435 (8th Cir. 1990), citing *Fowler v. Bowen*, 866 F.2d 249, 252 (8th Cir. 1989); *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000) ("An administrative law judge may not draw upon his own inferences from medical reports."). Having disregarded both Dr. Rubio's RFC assessment and the opinions of the non-examining State agency physicians, the ALJ's determination that Plaintiff retained the RFC to perform the full range of sedentary work with no nonexertional impairments is tantamount to the ALJ "playing doctor," a practice forbidden by law. *Pate-Fires v. Astrue*, 564 F.3d 935, 947 (8th Cir. 2009), citing *Rohan v. Chater*, 98 F.3d 966 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.").

Our consideration of the administrative record as a whole does not reveal a lack of support for Dr. Rubio's RFC findings; nor does the record show substantial inconsistencies within the doctor's treating notes and his ultimate findings. Further, there are no other medical assessments that

are supported by superior or more thorough medical evidence. Therefore, because the ALJ has erroneously discounted the opinion of the treating physician, Dr. Rubio, this matter must be remanded.

## B.  Use of the Grids

At the administrative hearing, the ALJ directed no hypothetical questions to the VE. Plaintiff's counsel asked the VE two hypothetical questions. First, the VE was asked if a person were limited in their ability to grasp, turn, or twist objects with their hands only fifty percent (50%) of the time, or in the use of their fingers for fine manipulations fifty percent (50%) of the time, or the use of their arms for reaching fifty percent (50%) of the time, would that significantly limit the sedentary work base. The VE responded that it would. (T. 53) Second, the VE was asked if a person were likely to miss work more than one (1) day per month, would that person be able to hold down a job. The VE responded that there would be no competitive employment for such a person. (T. 53)

The Medical-Vocational Guidelines, or the "grids," are used  to evaluate the claimant's age, education, past work experience, and RFC in order to determine whether that claimant is disabled. The grids, however, cannot be mechanically applied in all cases. *See Asher v. Bowen*, 837 F.2d 825, 827-28 (8th Cir. 1988). If a claimant suffers from a significant nonexertional impairment that diminishes that claimant's ability to perform a full range of work, then the ALJ may not rely upon the grids. *Sanders v. Sullivan*, 983 F.2d 822, 823-24 (8th Cir. 1992). Instead, the ALJ must rely upon the testimony of a VE or other similar evidence to determine whether the claimant is disabled. *Id.*; *Foreman v. Callahan*, 122 F.3d 24, 26 (8th Cir. 1997) ("[W]here a claimant suffers from a nonexertional impairment which substantially limits his ability to perform gainful activity, the grid cannot take the place of expert vocational testimony."). One example of a nonexertional impairment

-11-

is a manipulative limitation. *See Sanders*, 983 F.2d at 823 (holding that examples of nonexertional limitations include "mental, sensory, or skin impairments, as well as impairments which result in postural and manipulative limitations or environmental restrictions."). Pain is also a nonexertional impairment. *See Cline v. Sullivan*, 939 F.2d 560, 565 (8th Cir. 1991); *Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998). An ALJ may make a finding that a nonexertional impairment does not diminish a claimant's RFC to perform the full range of work - if the finding is supported by the record. *See Sanders*, 983 F. 2d. at 823-824 (citing *Thompson v. Bowen*, 850 F.2d 346, 349-350 (8th Cir. 1988)).

In this case, the non-examining State agency physicians concluded that Plaintiff could stand/walk for a total of about six (6) hours in an eight (8) hour workday; that she could sit for a total of about six (6) hours in an eight (8) hour workday; and, that she had no postural, manipulative or environmental limitations. (T. 399-401) The ALJ found that the evidence of record supported a determination that Plaintiff was more limited than that.

Plaintiff's treating physician, Dr. Rubio, opined that Plaintiff could sit about four (4) hours total in an eight (8) hour workday, and that she could stand/walk less than two (2) hours total in an eight (8) hour workday. (T. 484) Dr. Rubio indicated Plaintiff would be limited to reaching, handling or fingering fifty percent (50%) of the time during an eight (8) hour workday. Noting that Plaintiff's impairments were likely to produce good days and bad days, he opined that Plaintiff was likely to be absent from work as a result of her impairments more than four (4) days per month. (T. 486) Dr. Rubio also advised that Plaintiff should avoid temperature extremes and humidity as they would aggravate her joint symptoms. (T. 487) The VE's testimony, as elicited by Plaintiff's counsel, established that these are significant nonexertional impairments that substantially diminish Plaintiff's

-12-

ability to perform the full range of sedentary work. (T. 53) The ALJ posed no hypothetical questions to the VE concerning these nonexertional limitations, instead relying on the grids to determine that Plaintiff was not disabled. In light of the evidence of record, this was error. The ALJ should have accounted for Plaintiff's nonexertional limitations and elicited testimony from the VE to determine which sedentary jobs Plaintiff could perform. *See Sanders*, 983 F. 2d. at 823-824.

Accordingly, the ALJ's decision was not supported by substantial evidence, and the case must be reversed and remanded. On remand, the ALJ is instructed to: (1) obtain a current physical RFC assessment from Plaintiff's treating physician; (2) reassess Plaintiff's RFC, taking into account all of her impairments; and, (3) obtain a VE's testimony to determine if there are jobs Plaintiff can perform.

## IV. Conclusion:.

Having carefully reviewed the record, the undersigned finds there is not substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and therefore, the case should be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this 12th day of November, 2015.

/s/ Mark E. Ford
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE